# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| MISSION HOSPICE, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | NO. CIV-10-0897-HE |
| | ) | |
| KATHLEEN SEBELIUS, Secretary of | ) | |
| United States Department of Health and | ) | |
| Human Services, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

Plaintiff Mission Hospice, LLC ("Mission"), a hospice care provider, brought this action for declaratory and injunctive relief with respect to Medicare payments that defendant Kathleen Sebelius, in her official capacity as Secretary of the United States Department of Health and Human Services ("HHS"),[1] claims HHS overpaid to Mission. Mission seeks a determination that 42 C.F.R. § 418.309(b)(1), the regulation reflecting HHS' method of calculating the annual cap on payments to hospice providers, is invalid. It also seeks an order prohibiting defendant from relying on that regulation in computing overpayments allegedly owed by plaintiff, as well as certain other relief.

## BACKGROUND

In January 2010, HHS sought reimbursement from Mission for alleged overpayments totaling $150,799 for the fiscal year ending October 31, 2008. Mission sought and received an extended payment plan pursuant to which it has made, in the interim, partial repayment

---

[1]This order generally refers to the defendant as being HHS.

of the claimed amount. However, it also challenged the HHS determination and the regulation upon which it was based through the administrative process, ultimately resulting in the filing of this suit.

As a part of the Medicare program, HHS pays hospice providers on a per diem basis for hospice services rendered to Medicare beneficiaries. 42 U.S.C. § 1395f(i)(1). In addition to other limits, each provider is subject to an annual aggregate cap based on a per-beneficiary cap amount and the number of Medicare beneficiaries in the hospice program in the particular year. Id. § 1395f(i)(2)(A). If, after an annual retrospective determination of the cap, a provider has been paid in excess of the cap, the provider is obliged to return the excess.

In calculating the number of Medicare beneficiaries, and recognizing that individual beneficiaries my receive hospice services in multiple fiscal years or from multiple providers, the statute, 42 U.S.C. § 1395f(i)(2)(C), provides as follows:

> (C) For purposes of subparagraph (A), the "number of medicare beneficiaries" in a hospice program in an accounting year is equal to the number of individuals who have made an election under subsection (d) of this section with respect to the hospice program and have been provided hospice care by (or under arrangements made by) the hospice program under this part in the accounting year, <u>such number reduced to reflect the proportion of hospice care that each such individual was provided in a previous or subsequent accounting year</u> or under a plan of care established by another hospice program.

(emphasis added). The underscored portion of the statute is the portion most pertinent to the present inquiry.

The implementing regulation adopted by the Secretary provides as follows:

> Each hospice's cap amount is calculated by the intermediary by multiplying the adjusted cap amount determined in paragraph (a) of this section by the number of Medicare beneficiaries who elected to receive hospice care from the hospice during the cap period. For purposes of this calculation, the number of Medicare beneficiaries includes—
>
> (1) Those Medicare beneficiaries who have not previously been included in the calculation of any hospice cap and who have filed an election to receive hospice care, in accordance with § 418.24 from the hospice during the beginning on September 28 (35 days before the beginning of the cap period) and ending on September 27 (35 days before the end of the cap period).
>
> (2) In the cases in which a beneficiary has elected to receive care from more than one hospice, each hospice includes in its number of Medicare beneficiaries only that fraction which represent the portion of a patient's total stay in all hospices that was spent in that hospice . . . .

42 C.F.R. § 418.309(b)(1)-(2). The thrust of the regulation is that, as to patients whose hospice stay occurs in more than one accounting year, the patient cap amount is allocated (for purposes of computing the provider cap) to a single year rather than being proportioned to the multiple years in which the patient receives services. Here, plaintiff challenges the regulation in that regard, arguing it is inconsistent with the statute and that the repayment amount sought by HHS based on the regulation is therefore invalid.

Plaintiff has moved for summary judgment. Defendant's response essentially concedes the motion but, rather than acquiescing in summary judgment, asks via its own motion that the case be remanded to HHS for further proceedings. It advises that the Secretary is no longer defending the regulation involved here and in other similar suits, and that it will employ a revised regulation or standard in computing the aggregate cap that is consistent with the approach urged by plaintiff.

## DISCUSSION

Insofar as the validity of the challenged HHS regulation is concerned, plaintiff has shown a sufficient basis for entry of summary judgment. Defendant has not resisted the motion on the merits here.[2] Further, all the decided cases appear to support plaintiff's challenge to the validity of 42 C.F.R. § 418.309(b).[3] Both courts of appeal to have considered the issue have concluded the regulation is invalid as inconsistent with the underlying statute. Lion Health Services Inc. v. Sebelius, 635 F.3d 693, 700 (5th Cir. 2011) ("[W]e agree with the district court that the statute unambiguously requires the Secretary to use a strict proportional method of calculation, and the Regulation therefore contradicts Congress's expressed intent."); Los Angeles Haven Hospice, Inc., 638 F.3d 644, 660 (9th Cir. 2011) ("The regulation is at odds with the plain language of the statute in that it omits the individualized, proportional allocation calculation expressly called for in the statute."). Numerous district court decisions have reached the same conclusion. *See e.g.*, Hospice v. Sebelius, CIV-09-178-M, 2011 WL 102525, at *4 (W.D. Okla. Jan. 12, 2011); Prairie View Hospice, Inc. v. Sebelius, CIV-09-1234-C, 2010 WL 5125506, at * 2 (W.D. Okla. Dec. 9, 2010); Autumn Bridge, L.L.C. v. Sebelius, CIV-08-0819-F & CIV-10-0312-F, 2010 WL 6373006, at *4 (W.D. Okla. Dec. 3, 2010); Zia Hospice, Inc. v. Sebelius, ___ F. Supp. 2d ___, 2011 WL 2516944, at *8-9 (D.N.M. May 19, 2011); Infinity Care of Tulsa v. Sebelius, CIV-09-723, 2011 WL 778111, at *5 (N.D. Okla. Feb. 28, 2011). For substantially the same

---

[2]*The Tenth Circuit has observed that defendant has effectively "thrown in the towel" on the issue. See* Hospice of New Mexico, LLC. v. Sebelius, *Nos. 10-2136 & 10-2168, 2011 WL 2474293, at *1 (10th Cir. June 23, 2011).*

[3]*The parties' submissions do not identify any decision reaching a contrary result.*

4

reasons as stated in the referenced cases, the court concludes the challenged regulation is invalid and that plaintiff is entitled to judgment as to that issue.

Defendant argues, however, that the court should not enter summary judgment but rather should remand the case to recalculate the claimed overpayment in accordance with its changed policy. It indicates the new policy is reflected in the Centers for Medicare & Medicaid Services ("CMS") Ruling No. 1355-R, which it states applies a proportional method for calculating the repayment cap.[4] Plaintiff objects to a remand without a substantive determination, arguing that such a course of action potentially impacts its entitlement to attorneys fees and that the new HHS ruling is not technically applicable to a case such as this—one pending before a court, as opposed to an appeal still in the HHS administrative process. Defendant acknowledges that the terms of the new ruling technically apply only to appeals pending before an administrative appeals tribunal but states that "upon remand, HHS will grant Plaintiff the same relief provided in the ruling." [Doc. #25, p. 10].

In the circumstances of this case, the court concludes the appropriate remedy is to enter summary judgment substantially as sought by plaintiff and then remand the matter to HHS for further proceedings consistent with this determination.[5] The court makes no

---

[4]*According to defendant, the new method of calculation will be done on "a patient-by-patient proportional methodology to count the number of Medicare beneficiaries, as opposed to the methodology set forth in the current regulation at 42 C.F.R. § 418.309. The recalculation will account for beneficiaries who receive hospice services from the same hospice provider in multiple cap years using a 'proportional methodology.'" [Doc. #25].*

[5]*That is presumably what the application of Ruling No. 1355-R would do, but the court of course makes no anticipatory determination in that regard.*

5

determination here as to plaintiff's entitlement to attorneys fees or costs, but its potential entitlement to them should not, in the circumstances of this case, be impeded or complicated by remanding in advance of a substantive determination. Further, any question as to the applicability of the new ruling to this case is avoided by a substantive determination here.

The court also makes no determination as to whether plaintiff is entitled to the return of some or all of the amounts it has paid toward the alleged overpayment in the interim. The fact that an improper standard was used by defendant in computing the claimed overpayment does not necessarily mean that no repayment was owed. A determination of the proper amount owed by plaintiff to HHS (and hence any overpayment of the re-payment) is a complicated matter, one that the court is in no position to make based on the present submissions. Further, it is doubtful whether the court has the authority to, or at least should, order a refund in the procedural posture of this case. *See* Lion Health Services, Inc., 635 F.3d at 703-4. The court concludes remand is necessary so that a further determination as to the amounts, if any, properly owed by or to plaintiff, upon a proper recalculation of the pertinent aggregate cap, can be made.

## CONCLUSION

For the reasons stated, plaintiff's motion for summary judgment [Doc. #22] is **GRANTED** as follows: (1) 42 C.F.R. § 418.309(b) is declared to be invalid, as it is inconsistent with the statutory requirement of a proportional method of calculation, (2) defendant is enjoined from using 42 C.F.R. § 418.309(b) in determining any overpayment claimed as to plaintiff, and (3) this matter is remanded to HHS for further proceedings,

including a proper determination, consistent with the statute, of any amounts owed by or to plaintiff for the referenced fiscal year. Defendant's motion to remand [Doc. #25], which is not necessarily inconsistent with the court's disposition of the issues raised by the summary judgment motion, is also **GRANTED**.

The clerk of court is direct to administratively close this case in his records without prejudice to the right of a party, for good cause shown upon motion, to reopen the case for such further proceedings as may be appropriate. If, within **thirty (30) days** from completion of further administrative proceedings, a motion to reopen has not been filed, this case shall be deemed dismissed with prejudice.

**IT IS SO ORDERED**.

Dated this 29th day of July, 2011.

JOE HEATON
UNITED STATES DISTRICT JUDGE